JS 44   (Rev. 09/11)

# CIVIL COVER SHEET

# FILED UNDER SEAL

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

U.S., et. al., ex rel. McKenzie Stepe

**DEFENDANTS**

Novo Nordisk, Inc.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Mercer, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, Telephone Number, and Email Address)*
David S. Stone, Stone & Magnanini LLP
150 JFK Parkway, 4th floor, Short Hills, NJ 07078
(973) 218-1111 dstone@stonemagnalaw.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
       Plaintiff

☐ 3  Federal Question
       *(U.S. Government Not a Party)*

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                   *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment
     & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted
     Student Loans
     (Excl. Veterans)
☐ 153 Recovery of Overpayment
     of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product
     Liability
☐ 320 Assault, Libel &
     Slander
☐ 330 Federal Employers'
     Liability
☐ 340 Marine
☐ 345 Marine Product
     Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle
     Product Liability
☐ 360 Other Personal
     Injury
☐ 362 Personal Injury -
     Med. Malpractice

### CIVIL RIGHTS
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/
     Accommodations
☐ 445 Amer. w/Disabilities -
     Employment
☐ 446 Amer. w/Disabilities -
     Other
☐ 448 Education

**PERSONAL INJURY**
☐ 365 Personal Injury -
     Product Liability
☐ 367 Health Care/
     Pharmaceutical
     Personal Injury
     Product Liability
☐ 368 Asbestos Personal
     Injury Product
     Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal
     Property Damage
☐ 385 Property Damage
     Product Liability

### PRISONER PETITIONS
☐ 510 Motions to Vacate
     Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee -
     Conditions of
     Confinement

### FORFEITURE/PENALTY
☐ 625 Drug Related Seizure
     of Property 21 USC 881
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards
     Act
☐ 720 Labor/Mgmt. Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical
     Leave Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc.
     Security Act

### IMMIGRATION
☐ 462 Naturalization Application
☐ 463 Habeas Corpus -
     Alien Detainee
     (Prisoner Petition)
☐ 465 Other Immigration
     Actions

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal
     28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff
     or Defendant)
☐ 871 IRS—Third Party
     26 USC 7609

### OTHER STATUTES
☐ 375 False Claims Act
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and
     Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/
     Exchange
☒ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information
     Act
☐ 896 Arbitration
☐ 899 Administrative Procedure
     Act/Review or Appeal of
     Agency Decision
☐ 950 Constitutionality of
     State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding
☐ 2 Removed from
     State Court
☐ 3 Remanded from
     Appellate Court
☐ 4 Reinstated or
     Reopened
☐ 5 Transferred from
     another district
     *(specify)*
☐ 6 Multidistrict
     Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. 3729 et seq.
Brief description of cause:
Action for damages under the False Claims Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
     UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
05/23/2012

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
## FOR THE
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF LOUISIANA, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW HAMPSHIRE, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF TENNESSEE, STATE OF TEXAS, COMMONWEALTH OF VIRGINIA, STATE OF WISCONSIN, DISTRICT OF COLUMBIA, *ex rel.* [UNDER SEAL], | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) **COMPLAINT** ) **FILED UNDER SEAL** ) **PURSUANT TO** |
| v. | ) **31 U.S.C. § 3730(b)(2)** ) |
| [UNDER SEAL], | ) ) |
| Defendant. | ) ) ) |

## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF LOUISIANA, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW HAMPSHIRE, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF TENNESSEE, STATE OF TEXAS, COMMONWEALTH OF VIRGINIA, STATE OF WISCONSIN, DISTRICT OF COLUMBIA, *ex rel.* MCKENZIE STEPE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | **COMPLAINT** **FILED UNDER SEAL** **PURSUANT TO** **31 U.S.C. § 3730(b)(2)** |
| v. | ) ) | |
| NOVO NORDISK, INC., | ) ) | |
| Defendant. | ) | |

On behalf of the United States of America, Plaintiff and Relator McKenzie Stepe ("Stepe" or "Relator") files this *qui tam* complaint against Defendant Novo Nordisk, Inc. ("Novo" or "Defendant") and alleges as follows:

### I.        INTRODUCTION

#### A.        <u>Federal Law Claims</u>

1.        This is an action to recover treble damages and civil penalties on behalf of the United States of America in connection with the marketing and sale of certain brand name prescription drugs by Novo in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2.      Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims that Defendant submitted or caused to be submitted to Federal Government funded health insurance programs for Defendant's prescription drugs, including payments made by Medicare, Medicaid, the Federal Employees Health Benefits Program ("FEHBP"), the managed care component of the United States Department of Defense Military Health System ("TRICARE"), and the Civilian Health and Medical Program of the Department of Veterans Affairs ("CHAMPVA").

3.      Relator also asserts a related claim on her own behalf pursuant to 31 U.S.C. § 3730(h) for unlawful retaliation and seek appropriate statutory penalties and relief under that section.

4.      Having been terminated from her jobs for speaking up about Defendant's unlawful marketing schemes, and seeing no other recourse, Relator has brought Defendant's wrongdoing to the attention of the federal and state governments.

**B.      State Law Claims**

5.      This is also an action to recover double and treble damages and civil penalties on behalf of the named States arising from the conduct of Defendant who:  (a) made, used or presented, or caused to be made, used or presented, certain false or fraudulent statements, records and/or claims for payment or approval to the States; and/or (b) made, used or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the States, all in violation of each State's respective false claims act or similar statute. The false or fraudulent claims, statements and records at issue involve payments made by health insurance programs funded by these State governments, including Medicaid.

6.      The statutes of the States under which Relator brings this action are the:

1

a.  California False Claims Act, Cal. Govt. Code §§ 12651, *et seq.*;

b.  Colorado Medicaid False Claims Act, C.R.S. §§ 25.5-4-304, *et seq.*;

c.  Connecticut False Claims Act, Conn. General Statutes §§ 17b-301a, *et seq.*;

d.  Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, §§ 1201, *et seq.*;

e.  Florida False Claims Act, Fla. Stat. Ann. §§ 68.081, *et seq.*;

f.  Georgia False Medicaid Claims Act, Ga. Code. Ann. §§ 49-4-168.1, *et seq.*;

g.  Hawaii False Claims Act, Haw. Rev. Stat. §§ 661-21, *et seq.*;

h.  Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. §§ 175/1, *et seq.*;

i.  Indiana False Claims and Whistleblower Protection Act, Ind. Code §§ 5-11-5.5-1, *et seq.*;

j.  Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. §§ 46:439.1, *et seq.*;

k.  Maryland False Health Claims Act, 2010 Maryland Laws Ch. 4 (S.B. 279) (effective October 1, 2010);

l.  Massachusetts False Claims Law, Mass. Gen. Laws ch. 12, §§ 5A, *et seq.*;

m.  Michigan Medicaid False Claims Act, Mich. Comp. Laws §§ 400.601, *et seq.*;

n.  Minnesota False Claims Act, Minn. Stat. § 15C.01, *et seq.*;

o.  Nevada False Claims Act, Nev. Rev. Stat. §§ 357.010, *et seq.*;

p.  New Hampshire False Claims Act, N.H. Rev. Stat. Ann. §§ 167:61-b;

q.  New Jersey False Claims Act, N.J. Stat. Ann. §§ 2A:32C-1, *et seq.*;

r.  New Mexico Medicaid False Claims Act, N.M. Stat. Ann. §§ 27-14-1, *et seq.*, and New Mexico Fraud Against Tax Payers Act, N.M. Stat. Ann. §§ 44-9-1, *et seq.*;

s.  New York False Claims Act, N.Y. State Fin. Law §§ 187, *et seq.*;

t.  North Carolina False Claims Act, N.C.G.S. §§ 1-605, *et seq.*;

u.  Oklahoma Medicaid False Claims Act, 63 Okla. St. Ann. §§ 5053, *et seq.*;

v.  The State False Claims Act (Rhode Island), R.I. Gen. Laws §§ 9-1.1-1, *et seq.*;

w.  Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181, *et seq.*;

x.  Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. § 36.002;

y.  Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.1, *et seq.*;

z.  Wisconsin False Claims for Medical Assistance Law, Wisc. Stat. § 20.931; and the

aa. District of Columbia False Claims Act, D.C. Code Ann. §§ 2-308.03, *et seq.*

## II.  SUMMARY OF THE ALLEGATIONS

7.  Defendant Novo is a wholly-owned operating division of the Danish pharmaceutical company Novo Nordisk A/S specializing in the discovery, development, manufacture, and marketing of prescription medicine.  Novo is incorporated in Princeton, New Jersey and has offices within the United States in New Jersey, North Carolina and Washington. In 2010, Novo reported global profits of over $60 billion in Danish krone (=$10 billion USD).

8.  Novo engaged in "off-label" marketing campaigns for two of its major diabetes drugs, Victoza and Levemir.  As a result Novo reaped enormous gains from uses unapproved by the federal Food and Drug Administration ("FDA").  Novo's off-label marketing scheme resulted in the submission and payment of false claims within the meaning of the False Claims Act.

9.  Novo also paid kickbacks and illegal remunerations to physicians.  Novo paid physicians substantial sums of money, in some instances up to $50,000, to promote its drug line. Novo also directed its sales representatives to spend thousands of dollars on food and events for doctors and their staff each month in order to induce greater sales.  Additionally, Novo induced physicians to prescribe its drugs through celebrity speaker programs in which famous athletes

and personalities were invited to Novo-sponsored events to wine and dine with physicians.  By paying illegal kickbacks to physicians which are not disclosed to the government in violation of 42 U.S.C. § 1320a-7b(b) (the "Anti-Kickback Statute") and 42 U.S.C. § 1396r-8 (the "Medicaid Rebate Statute"), Novo caused and/or induced physicians who sought reimbursement for Novo drugs from federal government-funded health insurance programs to file false, and/or fraudulent, certifications regarding compliance with the Anti-Kickback Statute and the Medicaid Rebate Statute in violation of 31 U.S.C. §§ 3729 *et seq.*

10.     In sum, and as described more fully herein, Novo violated the federal and state False Claims Acts by engaging in fraudulent, deceptive, and illegal marketing, sales, and business practices which resulted in the federal and state governments paying for drugs they should not have paid for, or paying too much money for drugs they purchased or reimbursed. The resulting damages to the federal and state governments – and the taxpayers – are potentially in the millions of dollars.

### III.     JURISDICTION AND VENUE

11.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the subject matter of this civil action because it arises under the laws of the United States, in particular the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

12.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the subject matter of the claims brought pursuant to the false claims acts of the States on the ground that the claims are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13.     In addition, the FCA specifically confers jurisdiction upon United States District Courts under 31 U.S.C. § 3732.  This court has personal jurisdiction over Defendant pursuant to

31 U.S.C. § 3732(a) because Novo has offices and transacts business in the District of New Jersey.

14.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in the District of New Jersey.

15.     This Court has personal jurisdiction over Novo pursuant to 31 U.S.C. § 3732(a) because the False Claims Act authorizes nationwide service of process and Novo has sufficient minimum contacts within the United States of America.

16.     In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has been filed *in camera* and will remain under seal for a period of at least 60 days and shall not be served on the Defendant until the Court so orders.

17.     Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and/or a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator complied with this provision by serving copies of this Complaint upon the Honorable Paul J. Fishman, United States Attorney for the District of New Jersey, and upon the Honorable Eric H. Holder, Attorney General of the United States.

18.     Relator is not aware that the allegations in this Complaint have been publicly disclosed. Further, to the extent Relator is aware of any public disclosures, this Complaint is not based on such public disclosures. In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" because she has provided her information voluntarily to the Government before filing this Complaint, and has knowledge which is both direct and independent of any public disclosures to the extent they may exist.

## IV.    THE PARTIES

19.    Relator McKenzie Stepe is a resident of Wanaque, New Jersey.

20.    Ms. Stepe was employed by Novo from approximately March 2007 until her termination in February 2011.   As a sales representative, Ms. Stepe was responsible for selling the drugs at issue in this matter.

21.    From her employment with Novo, Ms. Stepe gained direct and personal knowledge of the facts alleged herein.

22.    Novo's corporate headquarters are located in Bagsvaerd, Denmark.

23.    Novo is listed on the NASDAQ (Novo-B) and the New York Stock Exchange (NVO).

24.    Novo conducts its United States operations from its offices at 100 College Road West, Princeton, New Jersey 08540.

## V.    GOVERNING LAWS, REGULATIONS AND CODES OF CONDUCT

### A.    <u>The False Claims Act</u>.

25.    Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act.  The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States.

26.    The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an

obligation to pay or transmit money or property to the Government." 31 U.S.C. §§ 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions is liable for a civil penalty of up to $10,000 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government.

27.     Significantly, the FCA imposes liability where the conduct is merely "in reckless disregard of the truth or falsity of the information" and further clarifies that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1).

28.     The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property . . . that . . . is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--(I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

29.     The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

30.     In this action, the Defendant failed to comply with anti-kickback statutes and regulations material to its products' qualifications for federal and state reimbursement.

B.    **Federal Government-Funded Health Assistance Programs**.

    1.  ·  **Medicare**.

        a.    **Generally**.

31.    Medicare is a federal government-funded medical assistance program, primarily benefiting the elderly, that was created in 1965 when Congress enacted Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq*.  Medicare is administered by the federal Centers for Medicare and Medicaid Services ("CMS"), known prior to 2001 as the Health Care Financing Administration, which is a division of the U.S. Department of Health and Human Services ("HHS").  Since 2006, Medicare Part D has provided optional prescription-drug coverage to persons eligible for Medicare coverage.

        b.    **The Stark Law's Prohibition Against Certain Financial Relationships**.

32.    Under the Stark Law section of Medicare, if a physician has a direct or indirect financial relationship with an entity (*e.g.*, a drug manufacturer), then "the physician may not make a referral to the entity for the furnishing of designated health services for which payment otherwise may be made under this subchapter." 42 U.S.C. § 1395nn(a) and 42 C.F.R. § 411.353. The implementing regulations specifically define "designated health services" ("DHS") to include "[o]utpatient prescription drugs."  42 C.F.R. § 411.351 ("Definitions").  Thus, if a physician has a direct or indirect financial relationship with a drug manufacturer, the physician may not prescribe that manufacturer's drugs to patients covered by federally-funded healthcare programs.

33.    The Stark Law incorporates many of the same concepts and terminology set forth in the Anti-Kickback Statute, such as prohibiting compensation to a physician that takes into account the "volume or value" of referrals to the entity.

8

34.     The Stark Law also specifically incorporates portions of the Anti-Kickback Statute (*e.g.*, 42 U.S.C. § 1320a-7a concerning civil monetary penalties) and also imposes its own civil penalties of $15,000 for each false claim caused to be presented which is found to be the product of an improper financial arrangement. 42 U.S.C. § 1395nn(g)(3).  In addition, the law heavily targets the entities (*e.g.*, drug manufacturers) dealing with physicians and imposes a $100,000 civil penalty upon the entity "for each such arrangement or scheme." 42 U.S.C. § 1395nn(g)(4).

35.     The Government has deemed such misconduct to be material to its decision to pay healthcare claims, in part through its requirement that providers certify compliance with this law as a condition of payment under, and participation in, Government healthcare programs.  If the Government had been aware that pharmaceutical drugs were prescribed as a result of such prohibited conduct, the Government would not have paid the claims submitted as a result of Novo's wrongdoing.

**2.     Medicaid.**

**a.     Generally.**

36.     The Medicaid program was created in 1965 when Congress enacted Title XIX of the Social Security Act to expand the nation's medical assistance program to cover the medically needy aged, the blind, the disabled, and needy families with dependent children.  42 U.S.C. §§ 1396-1396v.  The Medicaid program is funded by both federal and state monies, (collectively referred to as "Medicaid Funds"), with the federal contribution computed separately for each state.  42 U.S.C. §§ 1396b; 1396d(b).  At the federal level, Medicaid is administered by CMS. Medicaid is used by 49 states, each of which has a state Medicaid agency to administer the program.

37.     Each state is permitted, within certain parameters, to design its own medical assistance plan, subject to approval by the HHS.  Among other forms of medical assistance, the states are permitted to provide medical assistance from the Medicaid Funds to eligible persons for inpatient and outpatient prescription drugs.  42 U.S.C. §§ 1396a(10)(A); 1396d(a)(12).

38.     Federal law prescribes that drug manufacturers must pay rebates to the states to insure that the Medicaid Rebate Program is paying the lowest price the manufacturer sells a covered outpatient drug to any purchaser in the United States, inclusive of cash discounts, free goods, kickbacks, volume discounts and rebates.  The best price provision is intended to ensure that the government is being provided the lowest price on drugs.

   3.     **General Provisions Applicable to Both Medicare and Medicaid.**

      a.     **"Medically Accepted Indication" Precondition for Reimbursement of Prescription Drugs.**

39.     The Medicaid program reimburses only for "covered outpatient drugs" for which a rebate is paid by the drug's manufacturer.  42 U.S.C. § 1396b(i)(10).  The term "covered outpatient drug" requires use for a "medically accepted indication." 42 U.S.C § 1396r-8(k)(3).

40.     A "medically accepted indication" includes only those indications approved by the FDA, and those "off-label" uses that are "supported by one or more citations included or approved for inclusion in any of the compendia" listed in the statute.  42 U.S.C. § 1396r-8(k)(6); *see also* 42 U.S.C. § 1396r-8(g)(1)(B)(i) (identifying the compendia to be consulted).

41.     Each state Medicaid program has the power to exclude any drug from coverage if the prescription is not issued for a "medically accepted indication." 42 U.S.C. § 1396r-8(d)(1)(B).

42.     Medicare Part D defines a covered drug as one "that may be dispensed only upon a prescription," and expressly incorporates by cross-reference the Medicaid provisions excluding

coverage for drugs prescribed "off-label" as described in the preceding paragraphs.  42 U.S.C. § 1395w-102.

**b.      Prohibitions Against Claims for Services that are Not Medically Necessary or are Otherwise False or Fraudulent.**

43.      Federal law prohibits a person from knowingly presenting or causing to be presented to Medicare or Medicaid a claim for a medical or other item or service that the person knows or should know was "not provided as claimed," a claim for such items or services that is "false or fraudulent," or a claim that is "for a pattern of medical or other items or services that [the] person knows or should know are not medically necessary." 42 U.S.C. §§ 1320a-7a(a)(1)(A), (B) & (E).  A violation of this section is subject to a civil monetary penalty of $10,000 for each item or service, plus damages measured as three times the amount of each claim submitted, and exclusion from further participation in the programs.

**c.      The Anti-Kickback Statute Ensures Integrity of Underlying Conduct.**

44.      The Anti-Kickback Statute prohibits kickbacks by providing a civil monetary penalty of $50,000 for each act by an individual or entity that violates 42 U.S.C. § 1320a-7a(a)(7), which defines "[i]mproperly filed claims" as "[a]ny person (including an organization, agency, or other entity . . .) that . . . commits an act described in paragraph (1) or (2) of section" 1320a-7b(b) of this title.  The statute defines "illegal remuneration" (*i.e.*, kickbacks) as:

> (1) Whoever knowingly and willfully *solicits or receives* any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind –
>
> * * *
>
> (B)  in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

\* \* \*

(2)  Whoever knowingly and willfully *offers or pays* any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person –

\* \* \*

(B)  to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

42 U.S.C. § 1320a-7b(b) (emphasis added).  The offense is also a felony punishable by fines of up to $25,000 and imprisonment for up to five years.  42 U.S.C. § 1320a-7b(b).

45.    In accordance with the Anti-Kickback Statute, Medicare and Medicaid regulations directly prohibit any provider from receiving remuneration paid with the intent to induce referrals that take into account the "volume or value" of any referrals or business generated.  *See* 42 C.F.R. § 1001.952(f).  Such remuneration amounts to a kickback and can increase the expenditures paid by Government-funded health benefit programs by leading to overutilization of medical tests and inducing medically unnecessary and excessive reimbursements.  Kickbacks also effectively reduce patients' healthcare choices, because unscrupulous (or unknowing) physicians steer their patients to various products and procedures based on the physician's own financial interests rather than the patients' medical needs.

46.    The Anti-Kickback Statute contains statutory exceptions and regulatory "safe harbors" excluding certain types of conduct from liability.  *See* 42 U.S.C. § 1320a-7b(b)(3) and 42 C.F.R. § 1001.952.  None of these statutory exceptions or regulatory safe harbors applies to Defendant's conduct in this matter.

47.    The Medicare and Medicaid Patient and Program Protection Act of 1987 authorizes the exclusion of an individual or entity from participation in the Medicare and Medicaid programs if it is determined that the party has violated the Anti-Kickback Statute.  In

addition, the Balanced Budget Act of 1997 amended that Act to impose administrative civil monetary penalties for Anti-Kickback Statute violations; $50,000 for each act and an assessment of not more than three times the amount of remuneration offered, paid, solicited or received, without regard to whether a portion of such remuneration was offered, paid, solicited or received for a lawful purpose. *See* 42 U.S.C. § 1320a-7a(a)(7).

48.     The Government has deemed such misconduct to be material to its decision to pay healthcare claims, in part through its requirement that providers certify compliance with this law as a condition of payment under, and participation in, Government healthcare programs. If the Government had been aware that pharmaceutical drugs were prescribed as a result of such prohibited conduct, the Government would not have paid the claims submitted as a result of Novo's wrongdoing.

### C.   Direct Federal Health Insurance Plans and Medical Pricing Contracts.

#### 1.   Direct Federal Health Insurance Plans.

##### a.   TRICARE/CHAMPVA.

49.     TRICARE, administered by the Department of Defense ("DoD"), is the United States military's health care system, designed to maintain the health of active duty service personnel, provide health care during military operations, and offer health care to non-active duty beneficiaries, including dependents of active duty personnel and military retirees and their dependents. TRICARE is a triple-option benefit program designed to give beneficiaries a choice between health maintenance organizations, preferred provider organizations and fee-for-service benefits. Five managed care support contractors create networks of civilian health care providers.

50.     Similarly, CHAMPVA, administered by the Department of Veterans Affairs (the

"VA"), provides healthcare coverage to qualified families of deceased or 100% disabled veterans.

     **b.**    **Federal Employees Health Benefits Plan ("FEHBP").**

    51.    The FEHBP provides health insurance coverage for nearly 8.7 million federal employees, retirees and their dependents.  The FEHBP is a collection of individual health care plans, including the Blue Cross and Blue Shield Association, Government Employees Hospital Association, and Rural Carrier Benefit Plan.  FEHBP plans are managed by the Office of Personnel Management and collectively pay billions annually in medical benefits and reimbursements.

    **2.**    **The Anti-Kickback Act.**

    52.    Parties who contract or subcontract with the federal government are subject to the provisions of the Anti-Kickback Act.  That law renders it impermissible for any person "to provide, attempt to provide, or offer to provide any kickback," and defines 'kickback' to mean "any money, fee, commission, credit, gift, gratuity, *thing of value*, or compensation of any kind which is provided, directly or indirectly, to any prime contractor, prime contractor employee, subcontractor, or subcontractor employee *for the purpose of improperly obtaining or rewarding favorable treatment* in connection with a prime contract or in connection with a subcontract relating to a prime contract." 41 U.S.C. §§ 52-53 (emphasis added).  This broad language reflects Congress's intent to prohibit even *attempts* to offer or provide a kickback, and to include a wide array of benefits and activities within its scope.

    53.    The Government has deemed such misconduct to be material to its decision to pay healthcare claims, in part through its requirement that providers certify compliance with this law as a condition of payment under, and participation in, Government healthcare programs.  If the

14

Government had been aware that pharmaceutical drugs were prescribed as a result of such prohibited conduct, the Government would not have paid the claims submitted as a result of Novo's wrongdoing.

**D.    American Medical Association and American College of Physicians Ethics Policies.**

54.    In recent years, responding to health care companies' providing "increasingly lavish" gifts and payments to doctors in connection with seminars, conferences, and sales representative visits, and entering into relationships both formal and informal that created financial incentives for physicians to prescribe or order particular companies' products, the American Medical Association ("AMA") adopted several Ethical Opinions. The AMA's purpose was to discourage physicians from accepting payments, gifts and incentives from industry, to avoid creating "relationship[s] that could influence the use of the company's products."

55.    The AMA's opinion regarding "Gifts to Physicians from Industry" was adopted in 1990. (Opinion 8.061). That policy stated, in relevant part, that "[t]o avoid the acceptance of inappropriate gifts, physicians should observe the following guidelines:

(1)    Any gifts accepted by physicians individually should primarily entail a benefit to patients and should not be of substantial value. . . . Cash payments should not be accepted. . . .

(2)    Individual gifts of minimal value are permissible as long as the gifts are related to the physician's work (*e.g.*, pens and notepads).

(3)    [A] legitimate "conference" or "meeting" [is defined] as any activity, held at an appropriate location, where (a) the gathering is primarily dedicated, in both time and effort, to promoting objective scientific and educational activities and discourse (one or more educational presentation(s) should be the highlight of the gathering), and (b) the main incentive for bringing attendees together is to further their knowledge on the topic(s) being presented. An appropriate disclosure of financial support or

conflict of interest should be made.

(4)    Subsidies to underwrite the costs of continuing medical education conferences or professional meetings can contribute to the improvement of patient care and therefore are permissible. Since the giving of a subsidy directly to a physician by a company's representative may create a relationship that could influence the use of the company's products, any subsidy should be accepted by the conference's sponsor who in turn can use the money to reduce the conference's registration fee. Payments to defray the costs of a conference should not be accepted directly from the company by the physicians attending the conference.

(5)    Subsidies from industry should not be accepted directly or indirectly to pay for the costs of travel, lodging, or other personal expenses of physicians attending conferences or meetings, nor should subsidies be accepted to compensate for the physicians' time. Subsidies for hospitality should not be accepted outside of modest meals or social events held as a part of a conference or meeting. It is appropriate for faculty at conferences or meetings to accept reasonable honoraria and to accept reimbursement for reasonable travel, lodging, and meal expenses. It is also appropriate for consultants who provide genuine services to receive reasonable compensation and to accept reimbursement for reasonable travel, lodging, and meal expenses. Token consulting or advisory arrangements cannot be used to justify the compensation of physicians for their time or their travel, lodging, and other out-of-pocket expenses.

\* \* \*

(7)    No gifts should be accepted if there are strings attached. For example, physicians should not accept gifts if they are given in relation to the physician's prescribing practices. In addition, when companies underwrite medical conferences or lectures other than their own, responsibility for and control over the selection of content, faculty, educational methods, and materials should belong to the organizers of the conferences or lectures.

The AMA has further stated that these Guidelines "apply to all forms of gifts, whether they are offered in person, through intermediaries, or through the Internet." (Clarification of Opinion 8.061).

56.    In 1998, with the stated purposes of "achiev[ing] the necessary goals of patient

16

care" and "protect[ing] the role of physicians as advocates for individual patients," the AMA

adopted an Ethical Opinion regarding "Financial Incentives and the Practice of Medicine."

(Opinion 8.054).

57.     Among other things, Opinion 8.054 advised:

(1)     [Physicians'] first duty must be to the individual patient.  This
        obligation must override considerations of the reimbursement
        mechanism or specific financial incentives applied to a physician's
        clinical practice.

(2)(a)  [Financial] incentives may create conflicts of interest that can in
        turn compromise clinical objectivity. . . .  [I]t is important to
        recognize that sufficiently large incentives can create an untenable
        position for physicians.

58.     The AMA's Ethical Opinion regarding "Prescribing and Dispensing Drugs and

Devices" requires doctors to "prescribe drugs, devices and other treatments based solely upon

medical considerations and patient need and reasonable expectation of the effectiveness of the

drug, device or other treatment for the particular patient."  The Opinion expressly prohibited

physicians from accepting "any kind of payment or compensation from a drug company or

device manufacturer for prescribing its products."  (Opinion 8.06).

59.     Similarly, the American College of Physicians' Ethics Manual ("Ethics Manual")

recognized "drug industry gifts" as having potentially negative influence on clinical judgment

and noted that it was "unethical for a physician to receive a commission or a kickback from

anyone, including a company that manufactures or sells medical instruments or medications that

are used in the care of the physician's patients."  (Ethics Manual, "Financial Conflicts of

Interest").  The Ethics Manual further advises:

        The acceptance of individual gifts, hospitality, trips, and subsidies
        of all types from the health care industry by an individual
        physician is strongly discouraged. The acceptance of even small
        gifts has been documented to affect clinical judgment and

17

heightens the perception (as well as the reality) of a conflict of interest. In addition to applying the Royal College of Physicians' standard and asking "Would I be willing to have this arrangement generally known?", physicians should also ask "What would the public or my patients think of this arrangement?"; "What is the purpose of the industry offer?"; "What would my colleagues think about this arrangement?"; and "What would I think if my own physician accepted this offer?"

Physicians must critically evaluate all medical information, including that provided by detail persons, advertisements, or industry-sponsored educational programs. While providers of public and private graduate and continuing medical education may accept industry support for educational programs, they should develop and enforce strict policies maintaining complete control of program planning, content, and delivery. They should be aware of, and vigilant against, potential bias and conflicts of interest.

(Ethics Manual, "Financial Conflicts of Interest").

60.     The Ethics Manual also advises that physicians receiving compensation as "speakers" or "consultants" could have "potential conflicts of interest" and warned that such arrangements "must not in any way compromise their objective clinical judgment or the best interests of patients . . ." (Ethics Manual, "Financial Conflicts of Interest").

## VI.     SPECIFIC ALLEGATIONS

### A.     Novo's Illegal Marketing Practices.

61.     To meet aggressive sales and profit targets, Novo uses illegal marketing practices, including: (1) marketing drugs "off-label," *i.e.*, for uses other than those approved by the FDA; and (2) paying high-prescribing doctors kickbacks.

### 1.     Off-Label Promotion of Victoza.

62.     Novo markets Victoza "off-label," that is, promotes it for uses other than those expressly approved by the FDA. Through various techniques, Novo directs its sales representatives to engage doctors about off-label uses.

63.     Victoza is a glucagon-like peptide-1 (GPL-1) receptor agonist, which is a hormone produced in the gut that helps the pancreas release the right amount of insulin to move sugar from the blood into the cells.  A GPL-1 stimulates the beta cells in the pancreas to release insulin when blood sugar is too high after you eat.  It also helps to lower the amount of sugar produced by the liver.

64.     Victoza is not insulin even though Novo markets the drug to be "97% Similar to GPL-1, a Natural Hormone Made in Your Body."

65.     Victoza is an injectable prescription that is administered through an adjustable injection pen, the Victoza Pen, which allows patients to self-administer and adjust the dosing amount.

66.     Victoza is indicated as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

67.     Victoza is not recommended as first-line therapy for patients inadequately controlled on diet and exercise, and it is not indicated for treatment of type 1 diabetes mellitus or diabetic ketoacidosis, which is a complication resulting from a shortage of insulin.  Additionally, according to the Victoza package insert, the drug has not been studied in combination with insulin.

68.     Novo sought to increase its sales volume by cross-selling Victoza to patients using insulin.  Indeed, Novo sought FDA approval for this combination therapy; however, it never received the required approval.

69.     Nonetheless, Novo directs its sales associates to tell physicians that Victoza can be combined with insulin .  Novo markets in this manner despite the risk of serious side-effects associated with the drug.

70.     Victoza's package insert contains a boxed warning that the drug may cause cancer.  The warning states, "Liraglutide causes thyroid C-cell tumors at clinically relevant exposures in rodents.  It is unknown whether Victoza causes thyroid C-cell tumors, including medullary thyroid carcinoma (MTC), in humans, as humans relevance could not be determined by clinical or nonclinical studies."  The warning further states, "Victoza is contraindicated in patients with a personal or family history of MTC or in patients with Multiple Endocrine Neoplasia syndrome type 2 (MEN 2)."

71.     Novo directs its sales representatives to avoid discussing Victoza's potentially lethal side-effects.  In fact, during training role plays, sales associates are directed to say that "MTC is the rarest form of cancer, 1 in 5 million Americans have it" and "Victoza does not cause cancer in humans."  The sales representatives are trained to say the only reason MTC shows up in rodents is because rodents have higher levels of GLP-1 receptors in their thyroids.  Sales representatives are supposed to then ask, "Doctor, have you ever treated a patient for MTC?", and if the answer is no, to follow up with "then you have nothing to worry about, and therefore you can prescribe Victoza."

72.     Novo's sales representatives are constantly reminded to push prescriptions of Victoza's off-label use as a weight loss drug.

73.     Novo rewards sales associates with financial incentives through bonuses if they are able to sell the highest amount of Victoza.  Defendant trains sales representatives to tell physicians that higher dosing generates greater weight loss.

74.     Sales associates are given unlimited samples of Victoza to offer physicians to try on their patients in order to prove that it helps with weight loss.

75.     At the end of each month, sales associates input the number of samples they have left in their stock into a database.  However, they are told to do a "sample adjustment" if the number does not match with the actual amount they have.  Regardless of any discrepancies, however, sales reps are able to request additional samples at any point without any accountability.

76.     Novo's sales aides also focus on the potential weight loss benefits associated with Victoza.  Indeed, even the physician call notes and Defendant's messaging focuses on weight control.

77.     Novo's campaign to market Victoza off-label for weight loss has been so successful thatdoctors unaware of the dangers  have used the drug themselves and recommended Victoza for non-diabetics to help lose weight.

78.     In fact, heedless of the risk to their health, Novo encourages many sales representatives use Victoza themselves even though they are not diabetic and then to discuss the amount of weight they lost with physicians during sales calls.

79.     Novo targets medicaid patients for its off-label weight loss marketing campaign. As part of a national targeting plan, sales associates were directed to visit high-volume Medicaid offices, which Novo  called "low hanging fruit."  They were instructed to give those physicians multiple samples  for any patients who were overweight but who did not have insurance.  In return, the sales associates sought assurances from the physicians that they would prescribe Victoza for all of their Medicaid patients.

80.     Novo also directs sales associates to sell Victoza by stating that it is a "great option" for non-diabetics in order to prevent diabetes in the future because it assists with weight

loss and because of its ability to "prevent" weight gain – thereby, supposedly preventing type II diabetes.

81.    For physicians who write Januvia (a competing drug sold by Merck) prescriptions, sales representatives are instructed to state that Victoza is better than Januvia because it helps patients lose weight and that Januvia is "weight neutral." In other words, sales representatives have been taught to sell Victoza over competing drugs based solely on the potential for weight loss.

### 2.    Off-Label Promotion of Levemir.

82.    Novo also markets off-label another one of its main drugs, Levemir, by promoting its effects on potential weight loss.

83.    Levemir is indicated to improve glycemic control in adults and children with diabetes mellitus.  It is not recommended for the treatment of diabetic ketoacidosis.  Levemir is a type of insulin (insulin detemir), which is administered through an adjustable injection pen, the FlexPen.

84.    Weight gain is a side-effect for patients using insulin therapy.  Although Levemir has not been approved for controlling or reducing weight loss, Novo aggressively markets Levemir off-label by claiming that it produces less weight gain even though there is no scientific proof to support those statements.

85.    Because it markets Levemir and Victoza to diabetes patients seeking weight loss, Novo directs its sales representatives to cross-sell both drugs even though Victoza's package insert clearly states that it has not been studied in combination with insulin.  Sales representatives are instructed to tell physicians that physicians that they should prescribe Victoza in addition to Levemir for patients in need of additional weight loss.

86.     Novo trains its sales representatives to focus their core selling message for Levemir on weight loss; that it causes significantly less weight gain than its competitors or that it is "weight neutral." In fact, throughout 2010 Levemir's marketing theme was "Light as a Feather."

87.     Novo targets physicians who treat large numbers of Medicaid patients and markets Levemir by claiming that it is a Medicaid reimbursable drug unlike its competitors.

### 3.     Illegal Kickbacks.

88.     Novo's sales representatives are given excessive amounts of discretionary spending money with little or no oversight. This fosters an environment that allows illegal kickbacks.

89.     Novo's sales managers routinely approve expenses without receipts or verification. In fact, through the end of 2010, Novo did not require sales representatives to submit receipts for expenses that were less than $500.

90.     Novo sales managers look the other way or even instruct sales representatives to "just do what it takes" to pay off physicians and persuade them to write Victoza and Levemir prescriptions.

91.     On information and belief, sales representatives frequently ask restaurants and caterers to swipe their corporate credit cards in return for a promise to use their services or in exchange for cash. For example, without actually buying a meal, a sales representative will ask a restaurant to swipe a Novo credit card five times in $200 increments during the weeks leading up to a large party. This allows the representative to hoard a thousand dollars and then use the money to pay for a high-end dinner party that could otherwise raise flags.

92.     On information and belief, restaurants and caterers that are frequently used by

sales representatives also give cash or gift certificates in exchange for incremental corporate credit card swipes.

93.     Novo's sales managers know of and actually condone these illegal practices. Because the sales managers approve expenses they often suggest that the representative "find a way to get the expense approved" without raising concerns.

94.     As a result, Novo's sales representatives spend untold amounts of money on high-end dinners for doctors and their spouses, on drinks, party busses, strip club outings, sporting events, and for holiday and private parties.

95.     Novo also arranges celebrity dinner programs in which high prescribing physicians and their spouses are invited to have dinner with famous athletes and actors who are on Novo's payroll.

96.     Novo pays physicians tens of thousands of dollars to give presentations that last only a few minutes during these dinner programs.  Novo's sales representatives are instructed to choose physicians who are known to give short lectures so that the attendees can enjoy their expensive dinners.

97.     In order to maximize its return on investment, Novo instructs its sales representatives to target kickback spending on physicians with large Medicaid practices because Victoza and Levemir are federal reimbursable drugs and therefore more likely to be prescribed.

98.     In fact, in order to solicit Medicaid patients Novo created a "diabetes education program."  During these so-called training sessions where patients learn about Novo's diabetes medications, sales representatives give potential patients gift cards to stores and restaurants. Sales representatives use the same tactics described above to pay for the gift cards.

B.      **Defendant's Unlawful Retaliation and Conduct.**

99.     In or around the beginning of January 2011, the Relator began working for a new manager, David Strand.

100.    Mr. Strand accompanied the Relator on a "field ride" to meet with some of the physicians within her territory.  During the sales calls, Strand insisted that the Relator market Victoza as a weight loss drug, and that she try to set up patient/diabetes educator programs in which Novo trained nurses would talk to potential patients about the benefits of Victoza.

101.    The following day, Strand stated his dissatisfaction with the Relator's refusal to market Victoza through illegal means.

102.    The Relator contacted Novo's Human Resources department and described these events.

103.    The Relator was terminated shortly thereafter although she had an exemplary record with the company.

## VII.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**(False Claims Act: Presentation of False Claims)**
**(31 U.S.C. § 3729(a)(1)(A))**

104.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 103 of this Complaint as if fully set forth herein.

105.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein Defendant has knowingly presented or caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

## SECOND CAUSE OF ACTION
### (False Claims Act: Making or Using False
### Record or Statement to Cause Claim to be Paid)
### (31 U.S.C. § 3729(a)(1)(B))

106.    Relator repeats and incorporates by reference the allegations contained in

Paragraphs 1 through 105 of this Complaint as if fully set forth herein.

107.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts

alleged herein the Defendant have knowingly made, used, or caused to be made or used, false

records or statements – *i.e.*, the false certifications and representations made or caused to be

made by Defendant – material to false or fraudulent claims in violation of 31 U.S.C. §

3729(a)(1)(B).

## THIRD CAUSE OF ACTION
### (False Claims Act: Making or Using False Record
### Or Statement to Avoid an Obligation to Refund)
### (31 U.S.C. § 3729(a)(1)(G))

108.    Relator repeats and incorporates by reference the allegations contained in

Paragraphs 1 through 107 of this Complaint as if fully set forth herein.

109.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts

alleged herein the Defendant knowingly made, used or caused to be made or used false records

or false statements—*i.e.*, the false certifications made or caused to be made by Defendant—

material to an obligation to pay or transmit money to the Government or knowingly concealed or

knowingly and improperly avoided or decreased an obligation to pay or transmit money or

property to the Government.

## FOURTH CAUSE OF ACTION
### (False Claims Act: Retaliation)
### (31 U.S.C. § 3730(h))

110.    Relator repeat and incorporate by reference the allegations contained in

Paragraphs 1 through 109 of this Complaint as if fully set forth herein.

111.    As more particularly set forth in the foregoing Paragraphs by virtue of the acts

alleged herein, and particularly Paragraphs 152 through 165, the Defendant discharged, demoted,

threatened, harassed and/or discriminated against the Relator in the terms and conditions of their

employment after Relator lawfully reported what they believed to be fraudulent conduct or

wrongdoing to their superiors in violation of 31 U.S.C. § 3730(h).  Relator seek compensatory

damages and other appropriate statutory relief pursuant to this section.

### FIFTH CAUSE OF ACTION
### (False Claims Act: Conspiracy)
### (31 U.S.C. § 3729(a)(1)(C))

112.    Relator repeats and incorporates by reference the allegations contained in

Paragraphs 1 through 111 of this Complaint as if full set forth herein.

113.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts

alleged herein the Defendant conspired to make or present false or fraudulent claims and

performed one or more acts to effect payment of false or fraudulent claims.

### SIXTH CAUSE OF ACTION
### (Violations of Anti-Kickback Statute)
### (42 U.S.C. § 1320a-7a)

114.    Relator repeats and incorporates by reference the allegations contained in

Paragraphs 1 through 113 of this Complaint as if fully set forth herein.

115.    By engaging in the conduct described in the foregoing Paragraphs, Defendant has

violated 42 U.S.C. § 1320a-7a and 42 C.F.R. § 1001.952(f).

116.    In particular, Defendant has knowingly submitted claims to the United States

Government and to Medicaid as a result of the payment of the above-described kickbacks.  The

payment of kickbacks to induce purchases constitutes remuneration to increase the level of

business in violation of the anti-kickback statute.

117.    As a result of the conduct set forth in this cause of action, the Government suffered harm as a result of paying or reimbursing for medical supplies which, had the Government known such medical supplies were purchased as a result of kickbacks, the Government would not otherwise have paid for and/or reimbursed.

### SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

118.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 117 of this Complaint as if fully set forth herein.

119.    This is an action to recover monies by which Defendant has been unjustly enriched.  Due to the Defendant's improper practice, the United States paid monies to which the Defendant was not entitled.

120.    By reason of its payments, the United States has been damaged in an amount to be determined.

### EIGHTH CAUSE OF ACTION
### (California False Claims Act)
### (Cal. Govt. Code §§ 12651, *et seq.*)

121.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

122.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the California State Government for payment or approval.

123.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the California State Government to approve and pay such false and fraudulent claims.

124.    The California State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

125.    By reason of the Defendant's acts, the State of California has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

126.    Pursuant to Cal. Govt. Code § 12651(a), the State of California is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## NINTH CAUSE OF ACTION
### (Colorado Medicaid False Claims Act)
### (C.R.S. §§ 25.5-4-304, *et seq.*)

127.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

128.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Colorado State Government for payment or approval.

129.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Colorado State Government to approve and pay such false and fraudulent claims.

130.    The Colorado State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of

29

Defendant as alleged herein.

131.    By reason of the Defendant's acts, the State of Colorado has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

132.    Pursuant to C.R.S. §§ 25.5-4-305, Colorado is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## TENTH CAUSE OF ACTION
### (Connecticut False Claims Act)
### (Conn. Gen. Statutes §§ 17b-301a, *et seq.*)

133.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

134.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Connecticut State Government for payment or approval.

135.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Connecticut State Government to approve and pay such false and fraudulent claims.

136.    The Connecticut State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

137.    By reason of the Defendant's acts, the State of Connecticut has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

138.     Pursuant to Conn. Gen. Stat. § 17b-301b, Connecticut is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**ELEVENTH CAUSE OF ACTION**
**(Delaware False Claims and Reporting Act)**
**(Del Code Ann. tit. 6, §§ 1201, *et seq.*)**

139.     Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

140.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Delaware State Government for payment or approval.

141.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Delaware State Government to approve and pay such false and fraudulent claims.

142.     The Delaware State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

143.     By reason of the Defendant's acts, the State of Delaware has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

144.     Pursuant to Del Code Ann. tit. 6, § 1201(a), the State of Delaware is entitled to three times the amount of actual damages plus the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made,

used or presented by Defendant.

## TWELFTH CAUSE OF ACTION
### (Florida False Claims Act)
### (Fla. Stat. Ann. §§ 68.081, *et seq.*)

145.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

146.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Florida State Government for payment or approval.

147.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Florida State Government to approve and pay such false and fraudulent claims.

148.    The Florida State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

149.    By reason of the Defendant's acts, the State of Florida has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

150.    Pursuant to Fla. Stat. Ann. § 68.082(2), the State of Florida is entitled to three times the amount of actual damages plus the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### THIRTEENTH CAUSE OF ACTION
**(Georgia False Medicaid Claims Act)**
**(Ga. Code. Ann. §§ 49-4-168.1, *et seq.*)**

151.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

152.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Georgia State Government for payment or approval.

153.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Georgia State Government to approve and pay such false and fraudulent claims.

154.    The Georgia State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

155.    By reason of the Defendant's acts, the State of Georgia has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

156.    Pursuant to Ga. Code. Ann. § 49-4-168.1(a), the State of Georgia is entitled to three times the amount of actual damages plus the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### FOURTEENTH CAUSE OF ACTION
**(Hawaii False Claims Act)**
**(Haw. Rev. Stat. §§ 661-21, *et seq.*)**

157.    Relator repeats and incorporates by reference the allegations contained in

Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

158.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Hawaii State Government for payment or approval.

159.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Hawaii State Government to approve and pay such false and fraudulent claims.

160.    The Hawaii State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

161.    By reason of the Defendant's acts, the State of Hawaii has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

162.    Pursuant to Haw. Rev. Stat. § 661-21(a), the State of Hawaii is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## FIFTEENTH CAUSE OF ACTION
### (Illinois Whistleblower Reward and Protection Act)
### (740 Ill. Comp. Stat. §§ 175/1, *et seq.*)

163.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

164.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Illinois State Government for payment or

approval.

165.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Illinois State Government to approve and pay such false and fraudulent claims.

166.    The Illinois State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

167.    By reason of the Defendant's acts, the State of Illinois has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

168.    Pursuant to 740 Ill. Comp. Stat. § 175/3(a), the State of Illinois is entitled to three times the amount of actual damages plus the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## SIXTEENTH CAUSE OF ACTION
### (Indiana False Claims and Whistleblower Protection Act)
### (Ind. Code §§ 5-11-5.5-1, *et seq.*)

169.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

170.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Indiana State Government for payment or approval.

171.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the

Indiana State Government to approve and pay such false and fraudulent claims.

172.    The Indiana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

173.    By reason of the Defendant's acts, the State of Indiana has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

174.    Pursuant to Ind. Code § 5-11-5.5-2(b), the State of Indiana is entitled to three times the amount of actual damages plus at least $5,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### SEVENTEENTH CAUSE OF ACTION
**(Louisiana Medical Assistance Programs Integrity Law)**
**(La. Rev. Stat. Ann. §§ 46:439.1, *et seq.*)**

175.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

176.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Louisiana State Government for payment or approval.

177.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Louisiana State Government to approve and pay such false and fraudulent claims.

178.    The Louisiana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid

and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

179.    By reason of the Defendant's acts, the State of Louisiana has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

180.    Pursuant to La. Rev. Stat. Ann. § 46:438.6, the State of Louisiana is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## EIGHTEENTH CAUSE OF ACTION
### (Maryland False Health Claims Act)
### (2010 Maryland Laws Ch. 4 (S.B. 279) (effective October 1, 2010))

181.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

182.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Maryland State Government for payment or approval.

183.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Maryland State Government to approve and pay such false and fraudulent claims.

184.    The Maryland State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

185.    By reason of the Defendant's acts, the State of Maryland has been damaged, and

continues to be damaged, in substantial amount to be determined at trial.

186.    Pursuant to 2010 Maryland Laws Ch. 4 (S.B. 279) (effective October 1, 2010),

Maryland is entitled to three times the amount of actual damages plus the maximum penalty of

$10,000 for each and every false or fraudulent claim, record or statement made, used, presented

or caused to be made, used or presented by Defendant.

## NINTEENTH CAUSE OF ACTION
### (Massachusetts False Claims Law)
### (Mass. Gen. Laws ch. 12, §§ 5A, *et seq.*)

187.    Relator repeats and incorporates by reference the allegations contained in

Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

188.    By virtue of the acts described above, Defendant knowingly presented or caused

to be presented, false or fraudulent claims to the Massachusetts Commonwealth Government for

payment or approval.

189.    By virtue of the acts described above, Defendant knowingly made, used, or

caused to be made or used false records and statements, and omitted material facts, to induce the

Massachusetts Commonwealth Government to approve and pay such false and fraudulent claims.

190.    The Massachusetts Commonwealth Government, unaware of the falsity of the

records, statements and claims made, used, presented or caused to be made, used or presented by

Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or

conduct of Defendant as alleged herein.

191.    By reason of the Defendant's acts, the Commonwealth of Massachusetts has been

damaged, and continues to be damaged, in substantial amount to be determined at trial.

192.    Pursuant to Mass. Gen. Laws ch. 12, § 5B, the Commonwealth of Massachusetts

is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for

each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## TWENTIETH CAUSE OF ACTION
### (Michigan Medicaid False Claims Act)
### (Mich. Comp. Laws §§ 400.601, *et seq.*)

193.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

194.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of Michigan for payment or approval.

195.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Michigan State Government to approve and pay such false and fraudulent claims.

196.    The Michigan State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

197.    By reason of the Defendant's acts, the State of Michigan has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

198.    Pursuant to Mich. Stat. § 400.612, the State of Michigan is entitled to a civil penalty equal to the full amount received by the person benefiting from the fraud, three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## TWENTY FIRST CAUSE OF ACTION
### (Minnesota False Claims Act)
### (Minn. Stat. § 15C.01, *et seq.*)

199.     Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

200.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Minnesota State Government for payment or approval.

201.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Minnesota State Government to approve and pay such false and fraudulent claims.

202.     The Minnesota State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

203.     By reason of the Defendant's acts, the State of Minnesota has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

204.     Pursuant to Minn. Stat. § 15C.02, Minnesota is entitled to three times the amount of actual damages plus the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## TWENTY SECOND CAUSE OF ACTION
### (Nevada False Claims Act)
### (Nev. Rev. Stat. §§ 357.010, *et seq.*)

205.     Relator repeats and incorporates by reference the allegations contained in

Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

206.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Nevada State Government for payment or approval.

207.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Nevada State Government to approve and pay such false and fraudulent claims.

208.    The Nevada State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

209.    By reason of the Defendant's acts, the State of Nevada has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

210.    Pursuant to Nev. Rev. Stat. § 357.040(1), the State of Nevada is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**TWENTY THIRD CAUSE OF ACTION**
**(New Hampshire False Claims Act)**
**(N.H. Rev. Stat. Ann. § 167:61-b)**

211.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

212.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the New Hampshire State Government for payment

or approval.

213.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New Hampshire State Government to approve and pay such false and fraudulent claims.

214.    The New Hampshire State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

215.    By reason of the Defendant's acts, the State of New Hampshire has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

216.    Pursuant to § 167:61-b, the State of New Hampshire is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## TWENTY FOURTH CAUSE OF ACTION
### (New Jersey False Claims Act)
### (N.J. Stat. Ann. §§ 2A:32C-1, *et seq.*)

217.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

218.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the New Jersey State Government for payment or approval.

219.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the

New Jersey State Government to approve and pay such false and fraudulent claims.

220.     The New Jersey State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

221.     By reason of the Defendant's acts, the State of New Jersey has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

222.     Pursuant to N.J. Stat. Ann. § 2A:32C-3, the State of New Jersey is entitled to three times the amount of actual damages plus the maximum penalty allowed under the federal False Claims Act, 31 U.S.C. § 3729, for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## TWENTY FIFTH CAUSE OF ACTION
**(New Mexico Medicaid False Claims Act and Fraud Against Tax Payers Act)**
**(N.M. Stat. Ann. §§ 27-14-1 *et seq.* and §§ 44-9-1, *et seq.*)**

223.     Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

224.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the New Mexico State Government for payment or approval.

225.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New Mexico State Government to approve and pay such false and fraudulent claims.

226.     The New Mexico State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by

Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

227.     By reason of the Defendant's acts, the State of New Mexico has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

228.     Pursuant to N.M. Stat. Ann. § 27-14-4 and § 44-9-3, the State of New Mexico is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### TWENTY SIXTH CAUSE OF ACTION
**(New York False Claims Act)**
**(N.Y. State Fin. Law §§ 187, *et seq.*)**

229.     Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

230.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the New York State Government for payment or approval.

231.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New York State Government to approve and pay such false and fraudulent claims.

232.     The New York State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

233.     By reason of the Defendant's acts, the State of New York has been damaged, and

continues to be damaged, in substantial amount to be determined at trial.

234.    Pursuant to N.Y. State Fin. Law § 189.1(g), the State of New York is entitled to

three times the amount of actual damages plus the maximum penalty of $12,000 for each and

every false or fraudulent claim, record or statement made, used, presented or caused to be made,

used or presented by Defendant.

## TWENTY SEVENTH CAUSE OF ACTION
### (North Carolina False Claims Act)
### (N.C.G.S. §§ 1-605, *et seq.*)

235.    Relator repeats and incorporates by reference the allegations contained in

Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

236.    By virtue of the acts described above, Defendant knowingly presented or caused

to be presented, false or fraudulent claims to the North Carolina State Government for payment

or approval.

237.    By virtue of the acts described above, Defendant knowingly made, used, or

caused to be made or used false records and statements, and omitted material facts, to induce the

North Carolina State Government to approve and pay such false and fraudulent claims.

238.    The North Carolina State Government, unaware of the falsity of the records,

statements and claims made, used, presented or caused to be made, used or presented by

Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or

conduct of Defendant as alleged herein.

239.    By reason of the Defendant's acts, the State of North Carolina has been damaged,

and continues to be damaged, in substantial amount to be determined at trial.

240.    Pursuant to N.C.G.S. § 1-607, North Carolina is entitled to three times the amount

of actual damages plus the maximum penalty of $11,000 for each and every false or fraudulent

claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## TWENTY EIGHTH CAUSE OF ACTION
### (Oklahoma Medicaid False Claims Act)
### (63 Okla. St. Ann. §§ 5053, *et seq.*)

241.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

242.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Oklahoma State Government for payment or approval.

243.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Oklahoma State Government to approve and pay such false and fraudulent claims.

244.    The Oklahoma State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

245.    By reason of Defendant's acts, the State of Oklahoma has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

246.    Pursuant to 63 Okl. St. Ann. § 5053.1(B), the State of Oklahoma is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## TWENTY NINTH CAUSE OF ACTION
### (The State False Claims Act (Rhode Island))
### (R.I. Gen. Laws §§ 9-1.1-1, *et seq.*)

247.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

248.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Rhode Island State Government for payment or approval.

249.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Rhode Island State Government to approve and pay such false and fraudulent claims.

250.    The Rhode Island State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

251.    By reason of the Defendant's acts, the State of Rhode Island has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

252.    Pursuant to R.I. Gen. Laws § 9-1.1-3, the State of Rhode Island is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## THIRTIETH CAUSE OF ACTION
### (Tennessee Medicaid False Claims Act)
### (Tenn. Code Ann. §§ 71-5-181, *et seq.*)

253.    Relator repeats and incorporates by reference the allegations contained in

Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

254.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Tennessee State Government for payment or approval.

255.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Tennessee State Government to approve and pay such false and fraudulent claims.

256.    The Tennessee State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

257.    By reason of Defendant's acts, the State of Tennessee has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

258.    Pursuant to Tenn. Code § 71-5-182(a)(1), the State of Tennessee is entitled to three times the amount of actual damages plus the maximum penalty of $25,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### THIRTY FIRST CAUSE OF ACTION
**(Texas Medicaid Fraud Prevention Law)**
**(Tex. Hum. Res. Code Ann. § 36.002)**

259.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

260.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Texas State Government for payment or

approval.

261.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Texas State Government to approve and pay such false and fraudulent claims.

262.    The Texas State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

263.    By reason of the Defendant's acts, the State of Texas has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

264.    Pursuant to Tex. Hum. Res. Code Ann. § 36.052, the State of Texas is entitled to two times the amount of actual damages plus the maximum penalty of $15,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## THIRTY SECOND CAUSE OF ACTION
### (Virginia Fraud Against Taxpayers Act)
### (Va. Code Ann. §§ 8.01-216.1, *et seq.*)

265.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

266.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Virginia Commonwealth Government for payment or approval.

267.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the

Virginia Commonwealth Government to approve and pay such false and fraudulent claims.

268.    The Virginia Commonwealth Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

269.    By reason of Defendant's acts, the Commonwealth of Virginia has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

270.    Pursuant to Va. Code § 8.01-216.3(A), the Commonwealth of Virginia is entitled to three times the amount of actual damages plus the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**THIRTY THIRD CAUSE OF ACTION**
**(Wisconsin False Claims for Medical Assistance Law)**
**(Wisc. Stat. § 20.931)**

271.    Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

272.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Wisconsin State Government for payment or approval.

273.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Wisconsin State Government to approve and pay such false and fraudulent claims.

274.    The Wisconsin State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by

Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

275.   By reason of the Defendant's acts, the State of Wisconsin has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

276.   Pursuant to Wisc. Stat. § 20.931(2), the State of Wisconsin is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## THIRTY FOURTH CAUSE OF ACTION
### (District of Columbia False Claims Act)
### (D.C. Code Ann. §§ 2-308.03, *et seq.*)

277.   Relator repeats and incorporates by reference the allegations contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

278.   By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the District of Columbia Government for payment or approval.

279.   By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the District of Columbia Government to approve and pay such false and fraudulent claims.

280.   The District of Columbia Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendant as alleged herein.

281.   By reason of the Defendant's acts, the District of Columbia has been damaged,

51

and continues to be damaged, in substantial amount to be determined at trial.

282.    Pursuant to D.C. Code Ann. § 2-308.14, the District of Columbia is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## VIII.   DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against each of the above-named Defendant, jointly and severally, ordering that:

### As to the Federal Claims:

a.   Pursuant to 31 U.S.C. § 3729(a), Defendant pay an amount equal to three times the amount of damages the United States Government has sustained because of Defendant's actions which Relator currently estimate to be in the hundreds of millions of dollars, plus a civil penalty of not less than $6,500 and not more than $10,000 or such other penalty as the law may permit and/or require for each violation of 31 U.S.C. §§ 3729, *et seq*; $10,000 for each violation of 41 U.S.C. §§ 8701, *et seq.*;

b.   Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the False Claims Act and/or any other applicable provision of law;

c.   Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by 31 U.S.C. § 3730(d) and any other applicable provision of the law;

d.   Relator be awarded such other and further relief as the Court may deem to be just and proper.

### As to the State Claims:

e.   Relator and each named State Plaintiff be awarded statutory damages in an amount

equal to three times the amount of actual damages sustained by each State as a result of

Defendant's actions, as well as the maximum statutory civil penalty for each violation by

Defendant within each State, all as provided by:

> Cal. Govt. Code § 12651;
> C.R.S. § 25.5-4-304;
> Conn. Gen. Stat. § 17b-301a;
> 6 Del. C. § 1201;
> Fla. Stat. Ann. § 68.082;
> Ga. Code Ann. § 49-4-168.1;
> Haw. Rev. Stat. § 661-21;
> 740 Ill. Comp. Stat. § 175/3;
> Ind. Code § 5-11-5.5-2 ;
> La. Rev. Stat. § 46:438.6;
> 2010 Maryland Laws Ch. 4 (S.B. 279) (effective October 1, 2010);
> Mass. Gen. Laws Ch. 12 § 5B;
> Mich. Comp. Laws § 400.612;
> Minn. Stat. § 15C.01;
> Nev. Rev. Stat. Ann. § 357.040;
> N.H. Rev. Stat. Ann. § 167-61-b;
> N.J. Stat. Ann. § 2A:32C-3;
> N.M. Stat. Ann. § 27-14-4 and § 44-9-3;
> N.Y. Fin. Law § 189.1(g);
> N.C.G.S. § 1-605;
> 63 Okla. St. Ann. § 5053.1;
> R.I. Gen. Laws § 9-1.1-3;
> Tenn. Code Ann. § 71-5-182;
> Va. Code Ann. § 8.01-216.3;
> Wisc. Stat. § 20.931(2);
> D.C. Code Ann. § 2-308.14; and

f.  Relator and Plaintiff State of Texas be awarded statutory damages in an amount equal

to two times the amount of actual damages that Texas has sustained as a result of the

Defendant's actions within Texas, as well as the maximum statutory civil penalty for each

violation of Tex. Hum. Res. Code Ann. § 36.052;

g.  Relator be awarded his relator's share of any judgment to the maximum amount

provided pursuant to:

> Cal. Govt. Code § 12652(g)(2);

C.R.S. §§ 25.5-4-306;
Conn. Gen. Statutes §§ 17b-301a, *et seq.*;
6 Del. C. § 1205;
Fla. Stat. Ann. § 68.085;
Ga. Code. Ann. § 49-4-168.2(i);
Haw. Rev. Stat. § 661-27;
740 Ill. Comp. Stat. § 175/4(d);
Ind. Code § 5-11-5.5-6;
La. Rev. Stat. § 46:439.4;
2010 Maryland Laws Ch. 4 (S.B. 279) (effective October 1, 2010);
Mass. Gen. Laws Ch. 12 § 5F;
Mich. Comp. Laws § 400.610a;
Minn. Stat. § 15C.01, *et seq.*;
Nev. Rev. Stat. Ann. § 357.210;
N.H. Rev. Stat. § 167:61-e;
N.J. Stat. Ann. § 2A:32C-7;
N.M. Stat. Ann. § 27-14-9 and § 44-9-7;
N.Y. State Fin. Law § 190.6;
N.C.G.S. § 1-610;
63 Okla. St. Ann. § 5053.4;
R.I. Gen. Laws § 9-1.1-4;
Tenn. Code Ann. § 71-5-183;
Tex. Hum. Res. Code Ann. § 36.110;
Va. Code Ann. § 8.01-216.7;
Wisc. Stat. § 20.931(11); and
D.C. Code Ann. § 2-308.15;

    h.  Relator be awarded all costs and expenses associated with each of the pendent State

claims, plus attorney's fees as provided pursuant to:

Cal. Govt. Code § 12652(g)(8);
C.R.S. §§ 25.5-4-306;
Conn. Gen. Statutes §§ 17b-301a, *et seq.*;
6 Del. C. § 1205;
Fla. Stat. Ann. § 68.086;
Ga. Code. Ann. § 49-4-168.2(i);
Haw. Rev. Stat. § 661-27;
740 Ill. Comp. Stat. § 175/4(d);
Ind. Code § 5-11-5.5-6;
La. Rev. Stat. § 46:439.4;
2010 Maryland Laws Ch. 4 (S.B. 279) (effective October 1, 2010);
Mass. Gen. Laws Ch. 12 § 5F;
Mich. Comp. Laws § 400.610a;
Minn. Stat. § 15C.01, *et seq.*;
Nev. Rev. Stat. Ann. § 357.180;

N.H. Rev. Stat. § 167:61-e;
N.J. Stat. Ann. § 2A:32C-8;
N.M. Stat. Ann. § 27-14-9 and § 44-9-7;
N.Y. State Fin. Law § 190.7;
N.C.G.S. § 1-610;
63 Okla. St. Ann. § 5053.4;
R.I. Gen. Laws § 9-1.1-4;
Tenn. Code Ann. § 71-5-183;
Tex. Hum. Res. Code Ann. § 36.110;
Va. Code Ann. § 8.01-216.7;
Wisc. Stat. § 20.931(11); and
D.C. Code Ann. § 2-308.15;

i. Relator and the State Plaintiffs be awarded such other and further relief as the Court may deem to be just and proper.

## TRIAL BY JURY

Relator hereby demands a trial by jury as to all issues.

STONE & MAGNANINI LLP

By: _____
        David S. Stone
        Robert A. Magnanini
        150 John F. Kennedy Parkway
        4th Floor
        Short Hills, New Jersey 07078
        973-218-1111
        *Attorneys for Relator*

Dated: May 23, 2012